UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| Matthew Casella, individually and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>    - against -<br><br>Sam's West, Inc.,<br><br>                   Defendant | Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Sam's West, Inc. ("Defendant") manufactures and sells joint health supplements purporting to contain 500 mg of turmeric and curcumin under its Member's Mark brand ("Product").




2. The relevant front label representations state that the Product contains 500 mg of "standardized extract" of "turmeric curcumin complex."

3. The Supplement Facts on the back label specify that "95% Standardized Turmeric (*Curcuma longa*) Extract" was used.



4. Combined, these representations give consumers the impression the Product contains 95% (475mg) of curcuminoids per serving.

5. However, lab testing conducted by ConsumerLab.com in 2019 revealed that instead of the expected 475 mg, the Product contains only 9.7 mg of curcuminoids per serving.[1]

---

[1] Tod Cooperman, M.D., *Turmeric and Curcumin Supplements and Spices Review*, ConsumerLab.com (Sept. 15, 2019), https://www.consumerlab.com/reviews/turmeric-curcumin-supplements-spice-review/turmeric/.

| | | | | | |
|---|---|---|---|---|---|
| NA<br><br>Member's Mark® [Sam's Club] Turmeric Curcumin Complex<br><br>Dist. by Sam's West, Inc. | 1 capsule<br>500 mg Biocumin™ turmeric/curcumin complex<br><br>Found 9.7 mg curcuminoids per serving<br>*Very low amount. Suggests that only 1.9% of Biocumin™ complex is curcuminoids, even less than in regular root powder.*<br><br>Also tested for heavy metals<br>✓ | Adults - One capsule daily with food as a dietary supplement.<br><br>Large capsule | $0.06<br><br>[$3.06 based on amount found]<br><br>$14.88/250 capsules | *Suitable for vegetarians. No Artificial Colors Or Flavors. No Sugar. No Gluten. No Lactose. No Trans Fat.*<br><br>**Precaution:** Contains: Soy. | 1 capsule<br>Sodium 10 mg, Total Carbohydrate <1 g, Biocumin™ Turmeric / Curcumin Complex [Turmeric (*Curcuma longa*) Root Powder, 95% Standardized Turmeric (*Curcuma longa*) Extract, Antioxidants (ascorbic acid [Vitamin C] and d-alpha tocopheryl succinate [Vitamin E]) 500 mg<br><br>Additional Information<br><br>1 capsule<br>Sodium 10 mg, Total Carbohydrate <1 g, Biocumin™ Turmeric / Curcumin Complex [Turmeric (*Curcuma longa*) Root Powder, 95% Standardized Turmeric (*Curcuma longa*) Extract, Antioxidants (ascorbic acid [Vitamin C] and d-alpha tocopheryl succinate [Vitamin E]) 500 mg.<br><br>Ingredients: Turmeric, Hydroxypropyl Methylcellulose, CurcuWIN™ Turmeric Extract, Silicon Dioxide, Dicalcium Phosphate, Stearic Acid, Magnesium Stearate, Microcrystalline Cellulose, Ascorbic Acid, d-Alpha Tocopheryl Succinate. May contain ascorbyl palmitate, ethyl cellulose, natural mixed tocopherols, povidone. |

6. In addition, the Ingredients list states that "CurcuWIN™ Turmeric Extract" is the exact extract used.

**Ingredients:** Turmeric, Hydroxypropyl Methylcellulose, CurcuWIN™ Turmeric Extract, Silicon Dioxide, Dicalcium Phosphate, Stearic Acid, Magnesium Stearate, Microcrystalline Cellulose, Ascorbic Acid, *d*-Alpha Tocopheryl Succinate. May contain ascorbyl palmitate, ethyl cellulose, natural mixed tocopherols, povidone. **Contains: Soy.**

7. ConsumerLab's report provides that "CurcuWin is [only] 20% curcuminoids."

8. If the Product contains CurcuWIN, as listed in the Ingredients, the extract cannot also be "95% Standardized Turmeric (*Curcuma longa*) Extract," as listed in the Supplement Facts.

9. Consumers expect a joint health supplement represented – directly or indirectly – as containing 500 mg of "turmeric curcumin complex," utilizing "95% Standardized Turmeric (*Curcuma longa*) Extract," to contain at least 475mg of curcuminoids per serving.

10. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

## Jurisdiction and Venue

11. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

12. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

13. Plaintiff is a citizen of Tennessee.

14. Defendant is a citizen of Arkansas.

15. The class of persons Plaintiff seek to represent includes persons who are citizens of different states from which Defendant is a citizen.

16. The members of the classes Plaintiff seek to represent are more than 100, because the Product has been sold with the representations described here from dozens of Defendant's retail (Sam's Club) stores and website, across the States covered by the proposed classes.

17. Venue is in this District with assignment to the Northern Division because a substantial part of the events or omissions giving rise to these claims occurred in Knox County, including Plaintiff's purchase and use of the Product, reliance on the representations and omissions, and/or subsequent awareness they were false and misleading.

## Parties

18. Plaintiff Matthew Casella is a citizen of Knoxville, Tennessee, Knox County.

19. Defendant Sam's West, Inc. is an Arkansas corporation with a principal place of business in Bentonville, Arkansas, Benton County.

20. While Sam's Club stores sell leading national brands, they also sell a large number of products under one of their private label brands, Member's Mark.

21. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

22. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

23. Products under the Member's Mark brand have an industry-wide reputation for quality and value.

24. In releasing products under the Member's Mark brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

25. Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

26. That Member's Mark branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

27. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

28. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

29. Private label products under the Member's Mark brand benefit by their association with consumers' appreciation for the Sam's Club brand as a whole.

30. The development of private label items is a growth area for Sam's Club, as they select only top suppliers to develop and produce Member's Mark products.

31. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, from Defendant's website and retail locations, including 8435 Walbrook Dr, Knoxville, TN 37923, between 2017 and 2020, among other times.

32. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

33. Plaintiff saw the representations "turmeric curcumin complex," "standardized extract," "500 mg," and "95% Standardized Turmeric (*Curcuma longa*) Extract."

34. Plaintiff believed and expected the Product contained 95% (475mg) of curcuminoids per serving.

35. As a result of the false and misleading representations, the Product is sold at premium price, approximately not less than $14.88 for 250 capsules, excluding tax and sales.

36. Plaintiff bought the Product at or exceeding the above-referenced price.

37. Plaintiff paid more for the Product, would have paid less or not have purchased it had he known the representations and omissions were false and misleading.

38. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

6

39. Plaintiff chose between this Product and others represented similarly, but which did not misrepresent or omit their attributes, features, and/or components.

40. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its attributes and/or composition.

41. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other turmeric curcumin supplements, because he is unsure whether those representations are truthful.

42. If Defendant's labeling were to be truthful, Plaintiff could rely on the labeling of other turmeric curcumin supplements.

## Class Allegations

43. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Tennessee Class:** All persons in the State of Tennessee who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, Arkansas, Kentucky, Louisiana, Mississippi, Montana, and Tennessee who purchased the Product during the statutes of limitations for each cause of action alleged.

44. Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

45. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

46. Plaintiff is an adequate representative because his interests do not conflict with other members.

47. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

48. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

49. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

50. Plaintiff seeks class-wide injunctive relief because the practices continue.

Tennessee Consumer Protection Act ("TCPA"),
Tenn. Code Ann. § 47-18-101, *et seq.*
(Tennessee Class)

51. Plaintiff incorporates by reference all preceding paragraphs.

52. Plaintiff expected the expected the Product contained 95% (475mg) of curcuminoids per serving.

53. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

54. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

55. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

56. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

## Breaches of Express Warranty,
## Implied Warranty of Merchantability/Fitness for a Particular Purpose
## and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

57. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained 95% (475mg) of curcuminoids per serving.

58. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

59. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires.

60. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained 95% (475mg) of curcuminoids per serving.

61. Defendant's representations affirmed and promised that the Product contained 95% (475mg) of curcuminoids per serving.

62. Defendant described the Product so Plaintiff believed that it contained 95% (475mg) of curcuminoids per serving, which became part of the basis of the bargain that it would conform to its affirmations and promises.

63. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

64. This duty is based on Defendant's outsized role in the market for health supplements, as custodian of the Member's Mark brand.

65. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

66. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

67. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

68. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

69. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained 95% (475mg) of curcuminoids per serving.

70. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because he expected it contained 95% (475mg) of curcuminoids per serving, and he relied on its skill and judgment to select or furnish such suitable product.

Negligent Misrepresentation

71. Defendant had a duty to truthfully represent the Product, which it breached.

72. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, as custodian of the Member's Mark brand.

73. Defendant's representations regarding the Product went beyond the specific representations on its packaging and labels, as they incorporated its extra-labeling promises and commitments to quality Member's Mark has been known for.

74. These promises were outside of the standard representations that other companies

may make in a standard arms-length, retail context.

75. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

76. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

### Fraud

77. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained 95% (475mg) of curcuminoids per serving.

78. Defendant was aware the Product did not contain contained 95% (475mg) of curcuminoids per serving.

79. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception, through statement and omission, of the representations.

### Unjust Enrichment

80. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable attorney and expert fees; and

5. Other and further relief as the Court deems just and proper.

Dated: March 23, 2023

Respectfully submitted,

/s/ Brent S. Snyder
BPR # 021700
2125 Middlebrook Pike
Knoxville TN 37921
(865) 264-3328
brent@brentsnyderlaw.com

Sheehan & Associates, P.C.
Spencer Sheehan (*Pro Hac Vice* forthcoming)
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com