UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MATTHEW CASELLA, *individually and on behalf of all others similarly situated*, | ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) |
| SAM'S WEST, INC., | ) ) |
| *Defendant*. | ) |

Case No. 3:23-cv-102

Judge Atchley

Magistrate Judge McCook

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Sam's West, Inc.'s Motion to Compel Arbitration or, in the Alternative, to Dismiss. [Doc. 17]. For the reasons explained below, Defendant's Motion to Compel Arbitration will be **GRANTED**, and this matter will be **ORDERED** to arbitration in accordance with the parties' arbitration agreement.

I.     **FACTUAL BACKGROUND**

Plaintiff Matthew Casella filed this putative class action because he takes issue with the labeling of a dietary health supplement he purchased from Sam's Club. The theory of his case is that the product's label suggests that it contains 475 milligrams of curcuminoids per serving when in fact only 9.7 milligrams are present. [Doc. 1 at ¶ 2–5]. For the allegedly misleading product label, Plaintiff asserts claims for violation of the Tennessee Consumer Protection Act, breach of express warranty, fraud, and unjust enrichment.[1] Defendant contends that these claims should be referred to arbitration. [Doc. 18 at 12–13]. In support, Defendant represents that Plaintiff, as a condition of his membership with Sam's Club, agreed to arbitrate all disputes arising out of or

---

[1] In his Response to Defendant's Motion to Compel Arbitration, Plaintiff withdrew his claims for injunctive relief, negligent misrepresentation, implied warranty, and multi-state consumer fraud. [Doc. 26 at 9 n.2].

relating to his relationship with the company. [*Id.*]. Plaintiff counters that he was never provided notice of or given the opportunity to review the arbitration agreement. [Doc. 26 at 11]. In its Reply, Defendant asserts, through a supporting affidavit, that the arbitration agreement was mailed and emailed to Plaintiff. [Docs. 31, 32]. Because the Court finds that the parties entered into a valid arbitration agreement, Plaintiff's claims must be referred to arbitration for resolution.[2]

## II. STANDARD OF REVIEW

Courts have construed the Federal Arbitration Act ("FAA") as establishing "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Indeed, "[t]he FAA places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted). When confronted with a motion to compel arbitration, the reviewing court has four tasks:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted). Moreover, "[t]he Sixth Circuit treats motion to compel arbitration like motions for summary judgment." *Denton v. Allenbrooke Nursing and Rehab. Ctr., LLC*, 495 F. Supp. 3d 601, 607–08 (W.D. Tenn. 2020) (citing *Green Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). Once the movant presents

---

[2] Although this Order will not address the merits of Plaintiff's claims, the Court notes that Plaintiff's counsel has filed a barrage of lawsuits across the country, all premised on similar product mislabeling theories as those alleged here. *Van Orden v. Hikari Sales U.S.A., Inc.*, No. 1:22-cv-504, 2023 WL 5336813, at *9 (N.D.N.Y. Aug. 18, 2023) ("Plaintiff's counsel, Spencer Sheehan, Esq. of Sheehan & Associates, P.C., has filed approximately 316 actions since 2021, at least 18 of which were filed in this District, and virtually all of which are class action lawsuits alleging that the packaging on a consumer product is false and misleading."). Plaintiff's counsel has even been ordered to show cause as to why he should not be sanctioned under Rule 11 for filing frivolous product mislabeling lawsuits. *Brownell v. Starbucks Coffee Co.*, No. 5:22-cv-1199, 2023 WL 4489494, at *8 (N.D.N.Y. July 12, 2023).

"some evidence" that the parties agreed to arbitrate and makes out a prima facie showing of the agreement's existence, "the party opposing arbitration 'must show a genuine issue of material fact as to the validity of the agreement to arbitrate.'" *Id.* (quoting *Green Earth Cos.*, 288 F.3d at 889).

## III.    ANALYSIS

Before the Court may assess whether the parties entered into a valid arbitration agreement, it must first address one preliminary matter. Specifically, the Court must determine whether it may consider the materials presented in Defendant's reply affidavit when ruling on this Motion.

### A. Reply Affidavit Materials

Federal Rule of Civil Procedure 6(c)(2) provides that "[a]ny affidavit supporting a motion must be served with the motion." Logically, then, an affidavit that supports the initial motion to compel arbitration must be filed with that motion and cannot be filed in support of a subsequent reply. *See Johnson v. Pennyrile Allied Cmty. Servs.*, Case No. 5:20-cv-071, 2022 WL 468047, at *1 (W.D. Ky. Feb. 15, 2022). The Sixth Circuit has explained, however, "that reply affidavits—that is, affidavits that respond only to the non-movant's response—are permitted under the rule." *Id.* (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476–77 (6th Cir. 2002)).

In this case, the Court finds that Defendant's reply affidavit properly responds to arguments Plaintiff raised in his Response to the Motion to Compel Arbitration. The parties' initial briefing on the arbitration issue was rather minimal. Of the more than sixty pages of briefing between Defendant's Motion and Plaintiff's Response, only a handful of pages discuss the arbitration agreement. [*See* Docs. 18, 26]. Defendant's Motion simply offers a copy of the arbitration agreement and alleges that Plaintiff agreed to be bound by it as a condition of his membership with Sam's Club. [Doc. 18 at 12–13]. In his Response, Plaintiff provides an unsigned declaration wherein he asserts that he was never provided notice of or given an opportunity to review the

3

arbitration agreement. [Doc. 26 at 11; Doc. 26-1]. Defendant's reply affidavit is comprehensive by comparison; in it Sam's Club Senior Director of Membership John Tanner avers in a signed declaration that Sam's Club had Plaintiff's email and home address on file and that the arbitration agreement was sent to those addresses. [Doc. 32]. These averments, that the arbitration agreement was mailed and emailed to Plaintiff, respond directly to and potentially refute the arguments Plaintiff raised in his Response—specifically that he never received notice of the arbitration agreement and not once had an opportunity to review it. Accordingly, because Defendant's reply affidavit addresses Plaintiff's Response arguments, it is procedurally proper and may be considered by the Court.

The Court's consideration of Defendant's reply affidavit will not unfairly prejudice Plaintiff. Although "precedent establishes that, in the face of new evidence, the court should permit the opposing party an opportunity to respond" to a reply affidavit, Plaintiff has not requested leave to file a sur-reply. *Peters*, 285 F.3d at 477 (finding that the opposing party need not be given an opportunity to respond to the reply affidavit because it lacked any element of surprise and the opposing party had a week to respond before the hearing but failed to do so). Here, Defendant filed its reply affidavit on October 4, 2023, and its averments that Plaintiff had an email and home address on file with Sam's Club should not in any way come as a surprise. Given the time that has passed since Defendant filed its reply affidavit and Plaintiff's failure to make any effort to respond, the Court need not allow Plaintiff an opportunity to file a sur-reply.

### B. Arbitration Agreement

#### 1. Did the Parties Agree to Arbitrate?

When reviewing a motion to compel arbitration, the Court's first task is to determine whether the parties agreed to arbitrate. *Stout*, 228 F.3d at 714. The proponent of arbitration must first

present prima facie evidence of a valid arbitration agreement. *Pearsall v. McMinnville TN OPCO LLC*, No. 4:22-cv-38, 2022 WL 17543347, at * 2 (E.D. Tenn. Dec. 8, 2022) (citations omitted). Once that showing is made, the burden shifts to the party opposing arbitration, who "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Green Earth Cos.*, 288 F.3d at 889. This standard of review mirrors the one courts deploy when ruling on a motion for summary judgment. *Id.*

Defendant has carried its burden of presenting prima facie evidence of the arbitration agreement's existence. The facts of this case are similar to those in *Hammond v. Floor and Decor Outlets of America, Inc.*, No. 3:19-cv-1099, 2020 WL 2473717 (M.D. Tenn. May 13, 2020). There, the defendant's Human Resources Manager averred in a sworn affidavit that when the plaintiff was hired by the defendant, an arbitration agreement was included as part of the employee handbook provided to him. *Id.* at *4. The Human Resources Manager also averred that the plaintiff's personnel file with the defendant included a checklist which showed that Plaintiff received a copy of the employee handbook and arbitration agreement. *Id.* Although the Court ultimately concluded that the plaintiff had raised a material factual dispute through his sworn affidavit, it did find first that the defendant presented prima facie evidence of an arbitration agreement between the parties. *Id.* at *4, 5.

Here, in Defendant's Reply affidavit, Sam's Club Senior Director of Membership John Tanner avers that Plaintiff is a Sam's Club member and that his home and email addresses were on file with the company when communications regarding the arbitration agreement were disseminated. [Doc. 32 at 1–2]. More specifically, Mr. Tanner avers that Sam's Club sent an email to all of its members on January 9, 2020, including Plaintiff, who did not opt out of receiving email communications until 2023, that alerted to an update in its terms and conditions which added a

mandatory arbitration provision. [Doc. 32 at 2, ¶ 5–6]. Mr. Tanner further avers that Sam's Club mailed an "Instant Savings Book" to all of its members in January of 2020. [*Id.* at ¶ 7–9]. According to Mr. Tanner's affidavit, the Instant Savings Book was mailed to Plaintiff, as reflected by his membership number ending in #673, and it informed members of the new mandatory arbitration provision. [*Id.*]. These communications advised that by continuing one's membership with Sam's Club, he or she was agreeing to be bound by the mandatory arbitration provision. [*Id.* at ¶ 6, 8]. Based on his knowledge of Sam's Club's membership practices, Mr. Tanner avers that for each year he renewed his membership, Plaintiff would have been required to reconfirm that he agreed to his membership's terms and conditions, which included the arbitration provision. [*Id.* at ¶ 12]. As in *Hammond*, where the Human Resources Manager averred that materials containing the arbitration agreement were provided to the plaintiff and company records reflected as such, Mr. Tanner's affidavit shows that the arbitration agreement was provided to Plaintiff via mail and email and that corporate records confirmed that those communications were made. Consequently, Defendant has offered prima facie evidence of the existence of an agreement to arbitrate.

Defendant having met its burden, the Court must consider whether Plaintiff has raised a genuine issue of material fact as to the validity of the arbitration agreement. Plaintiff contends that he never agreed to arbitrate disputes with Defendant because he was never provided notice of or given the opportunity to review the arbitration agreement. [Doc. 26 at 11; Doc. 26-1]. But Plaintiff's contention was made in an unsigned declaration. [Doc. 26-1 at 2]. The Sixth Circuit makes clear that unsigned affidavits or declarations need not be considered when ruling on motions for summary judgment, and as discussed above, motions to compel arbitration are reviewed under the same standard. *Sfakianos v. Shelby Cnty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012). Plaintiff's unsigned declaration, which the Court will not consider, fails to create any genuine issue

of material fact as to the validity of the arbitration agreement. Accordingly, because Defendant has made a prima facie showing of the arbitration agreement's existence, and because Plaintiff has failed to create any genuine issue of material fact regarding the same, the Court finds that the parties agreed to arbitrate.

### 2. Scope of the Arbitration Agreement

Having determined that the parties agreed to arbitrate, the Court will now assess whether Plaintiff's claims fall within the scope of the arbitration agreement. *Stout*, 228 F.3d at 714. Plaintiff does not argue that his claims fall outside the scope of the parties' arbitration agreement, nor could he. The arbitration agreement provides as follows:

> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND SAM'S CLUB, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT SAM'S CLUB AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY.

[Doc. 19-1 at 10]. As its language broadly sets out, the arbitration agreement specifies that "all disputes arising out of or related to" the parties' relationship are subject to arbitration. [*Id.*]. Because Plaintiff's claims stem from an allegedly misleading label on a product he purchased from Sam's Club, this dispute unquestionably arises out of or relates to the parties' relationship and falls within the scope of the arbitration agreement.

### 3. Arbitrability of Federal Claims

For the third step in reviewing Defendant's Motion to Compel Arbitration, the Court must determine whether Congress intended that Plaintiff's federal law claims, if any, not be subject to arbitration. Here, Plaintiff's only federal claim is for violation of the Magnuson-Moss Warranty Act. [Doc. 1 at ¶ 57–70]. As the party opposing arbitration, the burden is on Plaintiff to show that

7

Congress intended to preclude arbitration of his federal claim. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)). Plaintiff has made no arguments as to whether Congress intended to preclude arbitration his Magnuson-Moss Warranty Act claim. Because Plaintiff has failed to carry his burden on this issue, the Court finds that Plaintiff's federal claim is subject to arbitration.

Notwithstanding Plaintiff's failure to satisfy his burden, the Court notes that it would find the Magnuson-Moss Warranty Act claim subject to arbitration in any event. While the Sixth Circuit has not addressed the issue of whether Magnuson-Moss Warranty Act claims are barred from arbitration, the Fifth and Eleventh Circuits have. *Koutoure Unique Tees & More, LLC v. Ramann Enters., Inc.*, No. 3-13-39, 2013 WL 2456189, at *1 (M.D. Tenn. June 6, 2013). Both the Fifth and Eleventh Circuits have found that the text, legislative history, and purpose of the Magnuson-Moss Warranty Act fail to suggest that Congress intended to preclude arbitration of claims brought under the Act. *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1274, 1280 (11th Cir. 2002); *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 475–76, 479 (5th Cir. 2002). The Court finds the reasoning of the Fifth and Eleventh Circuits persuasive and agrees that Magnuson-Moss Warranty Act claims are arbitrable, especially when considering the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24.

### 4. Stay or Dismiss the Case

The fourth and final step for the Court in ruling on Defendant's Motion to Compel Arbitration is to determine whether this action should be stayed or dismissed. Section 3 of the Federal Arbitration Act provides that that the Court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one*

8

*of the parties stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). In a recent decision interpreting this language, the Sixth Circuit, though declining to create an absolute rule, concluded that the use of "shall" "conveys a mandatory obligation" and suggests that a court should ordinarily enter a stay when one is requested. *Arabian Motors Grp., W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941–43 (6th Cir. 2021). Defendant requested in its Motion to Compel Arbitration that the Court "refer Plaintiff's claims to arbitration and stay or dismiss the Petition." [Doc. 18 at 13]. Considering Defendant's request and the record before it, the Court concludes that a stay of the case is the most appropriate course of action.

## IV. CONCLUSION

In light of the foregoing, Defendant's Motion to Compel Arbitration [Doc. 17] is **GRANTED**, and this matter is **ORDERED** to arbitration in accordance with the parties' arbitration agreement. Further, the Court **STAYS** this matter pending the conclusion of arbitration. Within fourteen (14) days of the conclusion of arbitration, the parties **SHALL NOTIFY** the Court of the outcome of the proceedings. Additionally, to ensure that arbitration begins promptly, the Court **ORDERS** the parties to file a status report within three (3) months of the entry of this Order and at three-month intervals thereafter until the arbitration proceedings conclude.

**SO ORDERED.**

        */s/ Charles E. Atchley, Jr.*
        **CHARLES E. ATCHLEY, JR.**
        **UNITED STATES DISTRICT JUDGE**